ADRIAN VROEGH, Special Adm'r of the Estate of Douglas P. Maicach, Deceased, Plaintiff-Appellant, v. J & M FORKLIFT et al., Defendants (Petrolane Gas Services, Ltd., et al., Third-Party Plaintiffs-Appellants, v. Worthington Industries, Inc., et al., Third-Party Defendants; A N R Freight System, Third-Party Defendant-Appellee).

First District (6th Division)   Nos. 1—91—4058, 1—91—4059, 1—91—4064 cons.

Opinion filed August 20, 1993.—Supplemental opinion filed on denial of rehearing December 3, 1993.

RAKOWSKI, J., concurring in part and dissenting in part.

Nicholas J. Motherway and Robert J. Napleton, both of Motherway & Glenn, P.C., of Chicago, for appellant Adrian Vroegh.

Gerard B. Gallagher and Ira E. Sussman, both of Gallagher & Joslyn, of Oakbrook Terrace, for appellant Petrolane Gas Services, Ltd.

Gerald O. Sweeney and John T. Williams, both of Lord, Bissell & Brook, of Chicago, and Thomas M. Taggart and Sandra J. Anderson, both of Vorys, Sater, Seymour & Pease, of Columbus, Ohio, for appellant Worthington Industries, Inc.

Barry L. Kroll, James R. Studnicka, Thomas H. Neukranz, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

This case is another in a considerable number of cases involving the "fireman's rule" in Illinois, but it is the first case which questions the rule's effect on the right of contribution between tortfeasors.

On January 3, 1989, Douglas Maicach, a member of the South Holland fire department, was killed while he was fighting a fire involving a propane gas-powered forklift truck owned by the defendant, A N R Freight System, Inc. (ANR), at a freight terminal maintained by ANR. Adrian Vroegh, the administrator of the estate of Douglas Maicach, filed a multi-count wrongful death complaint against the defendants, Worthington Industries, Inc. (Worthington), the manufacturer of the propane tank; Petrolane Gas Services, Ltd. (Petrolane), the supplier of the propane tank; J & M Forklift (J&M), which performed repairs on the forklift and ANR. Worthington and Petrolane filed third-party complaints against ANR for contribution. ANR filed

motions pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) to dismiss the wrongful death complaint against ANR and the third-party complaints of Worthington and Petrolane against ANR. The trial judge allowed all of ANR's motions to dismiss based on the "fireman's rule." In this appeal the plaintiff and the third-party plaintiffs maintain that the "fireman's rule" does not apply under the facts alleged in their complaints.

### THE WRONGFUL DEATH ACTION

The plaintiff's complaint alleged that ANR, with a conscious disregard for the safety of others, made the decision to utilize a forklift truck which had been modified from a gas-powered to propane-powered energy source without any approval or consultation with the manufacturer of the truck although it knew that use of the forklift truck with "unapproved modifications of any energy source by untrained personnel was likely to cause injury to others." The forklift truck caught fire and South Holland firefighters, including Douglas Maicach, were summoned to the freight terminal. While Douglas Maicach was "in performance of his duties" and was "in proximity" to the forklift truck, the propane tank exploded; all or part of the tank struck Douglas Maicach and killed him. ANR makes no issue of the sufficiency of the complaint to allege acts of negligence on the part of ANR.

In *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881, a fireman was killed when a staircase that he was climbing inside a burning building unexpectedly collapsed. Under the common law before *Dini*, a fireman was considered a licensee to whom a landowner owed no duty except to refrain from willful and wanton misconduct. The *Dini* court reviewed the trend of other jurisdictions which, in an attempt to ameliorate the harsh effects of the licensee status, raised the status of firefighters to invitees. Our supreme court chose to abandon the distinction between licensees and invitees but held that landowners owed firefighters a duty of reasonable care to keep their premises safe.

Although *Dini* established a landowner's general duty to firefighters, the precise scope of that duty has been refined by subsequent case law. Later cases have held that a firefighter may recover from injuries resulting from causes independent of the fire, but may not recover for acts of negligence which caused the fire or brought the firefighter to the premises. A landowner, therefore, is insulated from liability under the "fireman's rule" when the injuries are causally related to the fire itself and the risks inevitably associated with fighting the fire. See *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 379

N.E.2d 281; *Washington v. Atlantic Richfield Co.* (1976), 66 Ill. 2d 103, 361 N.E.2d 282; *Young v. Toledo, Peoria & Western R.R. Co.* (1977), 46 Ill. App. 3d 167, 360 N.E.2d 978; *Erickson v. Toledo, Peoria & Western R.R.* (1974), 21 Ill. App. 3d 546, 315 N.E.2d 912.

The supreme court has explained the public policy consideration for the rule:

> "This distinction evolved for two mutually supportive reasons. First, since most fires occur because of the negligence of the landowner or occupier, it was believed that the imposition of a duty to prevent fires from occurring or spreading on a person's premises would place an unreasonable burden upon the person who owned or occupied improved land. [Citations.] This public policy consideration, however, tended to undermine the general duty imposed upon landowners or occupiers to exercise reasonable care to keep their premises safe. A compromise was reached with regard to firemen, recognizing that the risk of harm from fire is inherent in a fireman's occupation." *Court*, 72 Ill. 2d at 148.

The "fireman's rule" has been interpreted to mean that a firefighter, who enters upon property to fight a fire, assumes the risk of being injured by causes related to the fire, but not those risks which are unrelated to the fire. (*McShane v. Chicago Investment Corp.* (1992), 235 Ill. App. 3d 860, 601 N.E.2d 1238.) The rationale for the rule is based on the fact that firefighters receive specialized training to anticipate and encounter risks associated with fires; while a firefighter may be able to recover for unexpected or hidden dangers, he may not recover for injuries caused by dangers which his training and experience would lead him to reasonably anticipate. *Court*, 72 Ill. 2d at 148.

In three cases, two firefighters and one policeman recovered for injuries. In *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881, the supreme court stated that the collapsed staircase, which was unaffected by the fire, had been defectively constructed. The court also noted that the storage room located near the staircase contained highly flammable products, including paint and benzene, the corridors were filled with trash and there were no fire doors. The court upheld a verdict for the plaintiff because the failure of the property owner to exercise reasonable care in the maintenance of the property resulted in the death of a firefighter who was in a place where he might reasonably be expected to be.

In *Hedberg v. Mendino* (1991), 218 Ill. App. 3d 1087, 579 N.E.2d 398, while responding to a call about a prowler on the premises, the

plaintiff policeman was injured when he tripped on a depressed portion of a sidewalk leading to the premises. The appellate court reversed the dismissal of the plaintiff's complaint, finding that the plaintiff's injury arose from a cause independent of the reason that the officer was called to the premises. The court applied the "fireman's rule" and noted that firefighters are not allowed recovery for injuries sustained by risks that are associated with fighting a fire and are reasonably anticipated, but they do not assume risks that are "hidden from or unanticipated by the fire fighters." *Hedberg*, 218 Ill. App. 3d at 1090.

In the third case in which the court found that the "fireman's rule" permitted recovery, *Harris v. Chicago Housing Authority* (1992), 235 Ill. App. 3d 276, 601 N.E.2d 1011, when the firefighters attempted to connect the fire hoses to the water standpipes, there was no water pressure. The plaintiff alleged that due to the dysfunctional standpipes, the firefighters were unable to fight the fire with water and that a continuous build up of heat and gases occurred which caused the explosion. In reversing dismissal of the complaint the appellate court said this:

> "The key issue in the case before us is whether the explosion which injured the plaintiff fireman was an inherent risk assumed by the plaintiff upon entering defendant's premises or whether it can be attributed to an independent act of negligence by defendant, such as failing to inspect and maintain operable standpipes in accordance with fire safety regulations. * * *
>
> Explosions are not normally equated with a fire although they do occur. The additional element in this case is the lack of water, which is another force or agency which a fireman would reasonably expect to be available. No fireman would be expected to fight a fire without water. This is a plain and simple axiom. Because of the lack of water, certain gases or fumes were put into the process of compression and resultant expansion which engendered an explosion. This brings this case within the purview of *Dini* and perhaps expands the concept by introducing a force set into motion by defendant's negligence in failing to maintain operable standpipes." *Harris*, 235 Ill. App. 3d at 279.

However, in other fire-related injury cases, firefighters were denied recovery. In *Coglianese v. Mark Twain Ltd. Partnership* (1988), 171 Ill. App. 3d 1, 524 N.E.2d 1031, the fireman was overcome by smoke, soot and noxious gases and died of suffocation. The complaint

alleged that the defendant hotel owner had created a latent hazard by constructing interior walls of materials which were not fire resistant, were highly combustible, and were in violation of various building and fire prevention codes. In affirming dismissal of the complaint, the appellate court refused to impose liability on the landowner because the plaintiff had failed to show how the condition of the defendant's walls had produced gases or smoke that were unusual in any manner or different in type, quality or amount from those of an ordinary fire. The court noted that a firefighter is trained to expect the unexpected and it would be unrealistic for the law to pretend otherwise. The court emphasized that the significant link of proximate cause was missing and held that the great amount of smoke and noxious fumes were not an independent cause of the fire, but only contributed to the severity of the fire.

In *Luetje v. Corsini* (1984), 126 Ill. App. 3d 74, 466 N.E.2d 1304, the appellate court affirmed the dismissal of a complaint where the plaintiff firefighter was injured by part of a chimney that fell during the fire. The court noted that the landowner's duty included warning the firefighter of known latent defects. The *Luetje* court also held that the nature of the defendant's conduct, framed as willful and wanton, does not determine the issue of landowner liability. That holding of *Luetje* is particularly significant because the effect of the holding is that the firefighter could not recover even if he were to be considered a licensee, as he was before *Dini*.

In *Horcher v. Guerin* (1968), 94 Ill. App. 2d 244, 236 N.E.2d 576, the appellate court upheld judgment notwithstanding the verdict for the premises owner where the firefighter used a ladder to break second-floor windows for ventilation and a piece of glass struck and injured his eye. The *Horcher* court, like the *Luetje* court, reasoned that the duties of a firefighter expose him to risk from fire and that falling structures and broken glass are reasonable risks of the profession. Both courts, therefore, relied on the fact that the injuries suffered were not caused by circumstances independent of the fire, but rather were part of the risk normally associated with firefighting.

We turn now to the allegations of the complaint. All facts properly pleaded in the complaint must be taken as true. A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which would entitle a plaintiff to recover. *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224.

It is alleged that ANR modified (or changed) from a gasoline-powered energy source to a propane-powered energy source without any approval or consultation with the manufacturer of the truck although

it knew that use of the forklift truck with "unapproved modification of any energy source by untrained personnel was likely to cause injury to others." The truck caught fire, and Douglas Maicach was trying to put the fire out when the propane tank exploded. All or part of the tank struck Maicach. Because ANR did not and does not specifically attack the sufficiency of the allegations to charge negligence on the part of ANR and thereby give the plaintiff an opportunity to amend the complaint, we will consider the allegations to be allegations of negligence on the part of ANR.

■ We conclude that the plaintiff would never be able to prove any set of facts which would establish that the deceased's injuries were sustained by risks that are not associated with fighting fires and would not be reasonably anticipated by a firefighter. The forklift truck itself was on fire. Maicach, like any reasonable person, must have realized that the source of the forklift power, be it gasoline or propane, was highly combustible and could explode. The danger to Maicach and the risks he had to take were apparent.

We are not persuaded by the plaintiff's argument that the explosion of the propane tank was different from an explosion of a gasoline tank in that the explosion of the propane tank caused the tank itself or parts of the tank to act like projectiles. We are not convinced that there are significant differences in the reactions of exploding gasoline tanks and exploding propane tanks. The difference between a gasoline tank explosion with attendant spewing of flaming gasoline and an explosion of a propane tank which causes shards of metal to act like shrapnel is a nicety of physics and chemistry that we refuse to find controlling here. But we do not rest our conclusion on whether there are or are not some differences in the reactions.

The plaintiff's argument is that the deceased might have anticipated an explosion by a gasoline tank which would be one type of reaction, but he might not have anticipated the reaction caused by the explosion of a propane tank. In short, the plaintiff's argument is that the deceased might have expected an explosion, but he did not expect the type of explosion that occurred. We disagree. As was said in *Coglianese*, a fireman is trained to expect the unexpected, and it would be unrealistic for the law to pretend otherwise. (*Coglianese*, 171 Ill. App. 3d at 8.) We find that *Coglianese* is strong support for ANR's position here. Indeed, we find that the facts of *Coglianese* were stronger for the plaintiff than are the facts in this case. Nonetheless, the appellate court upheld dismissal of a complaint. In *Coglianese*, the dangers the firefighter faced were not apparent, and the defendant violated fire safety provisions of the municipal code. In the case be-

fore us, the danger of some type of explosion was apparent, and there are no allegations of violations of any ordinances.

In *Harris*, the case upon which the plaintiff heavily relies, the firefighters could not reasonably have anticipated that there would be no water, and the absence of water was caused by the negligence of the defendant. Consequently, we do not believe that *Harris* is support for the plaintiff's position here.

For these reasons, we conclude that the trial judge properly dismissed the plaintiff's complaint against ANR. The judgment of the circuit court dismissing the plaintiff's complaint is affirmed.

## THE THIRD-PARTY ACTIONS

Count II of the plaintiff's complaint alleged that Petrolane was in the business of supplying propane and pressurized tanks as a power source for equipment, including forklift trucks. Before the date of the accident Petrolane supplied a tank of propane gas to ANR, which was used to power the forklift truck. Petrolane was negligent in that it supplied a propane tank with a defective safety valve incapable of proper venting to avoid explosion when the tank came into proximity with fire; it failed to provide proper and adequate warning as to safe usage of its propane tank; and it improperly filled the tank with propane.

In count III the plaintiff alleged that Worthington was in the business of manufacturing, selling and delivering propane cylinders for use as containers for propane gas. Before the date of the accident, Worthington sold the propane cylinder to Petrolane. At the time it left the control of Worthington, the propane cylinder was in an unreasonably dangerous condition in that it was "of a design such that it was likely to explode when subject to the foreseeable exposure to extreme heat."

Count III of Petrolane's complaint sought contribution from ANR and alleged five specific acts which constituted misuse of the propane tank. Petrolane also alleged in another count that ANR failed to train and supervise its personnel in the proper positioning and loading of the propane tank, failed to inspect the propane tank bracket device, bracket straps and centering pin, failed to correct a dangerous condition and failed to warn the decedent of the dangerous condition.

Worthington's third-party complaint for contribution against ANR in substance repeated the same allegations of Petrolane's complaint.

In response to ANR's motion to dismiss, Worthington filed the affidavit of Kenneth Robbins, the engineering manager of a subsidiary of Worthington. In that affidavit Robbins said that an application of

heat to propane tanks, in general, will cause internal pressure to build; and if the pressure-relief valve is properly functioning, explosions should not occur even when exposed to the heat of the fire because internal tank pressure will be dissipated by the opening of the pressure-relief valve. ANR does not make any issue of Worthington's reference to the affidavit of Robbins.

Worthington and Petrolane argue that under the *allegations of their complaints* ANR "created a latent and unforeseeable danger" and that, therefore, ANR's conduct was "outside the protection of the 'fireman's rule.' " Worthington also argues that the "fireman's rule" should not apply to one "who negligently alters the condition of a product which causes injury to a fireman on his premises." Worthington points out that under *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 379 N.E.2d 281, a manufacturer is liable to a firefighter under strict liability and that, therefore, so should one who has altered the condition of the manufacturer's product which proximately caused injury to a firefighter.

ANR has briefly responded to the arguments of Worthington and Petrolane in which they cite *Court*, but the main thrust of ANR's argument is that the complaints of Worthington and Petrolane are barred by the doctrines of *res judicata* or collateral estoppel. ANR's argument is that the Contribution Act (Ill. Rev. Stat. 1989, ch. 70, par. 302 *et seq.*) requires contribution only from one tortfeasor to another; the dismissal of the plaintiff's complaint against ANR is an adjudication that ANR is not a tortfeasor; therefore, there can be no contribution by ANR to Petrolane and Worthington.

Section 2 of the Contribution Act (Ill. Rev. Stat. 1989, ch. 70, par. 302) provides:

"[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them."

ANR relies upon three cases: *Enblom v. Milwaukee Golf Development* (1992), 227 Ill. App. 3d 623, 592 N.E.2d 190; *McCombs v. Dexter* (1989), 186 Ill. App. 3d 484, 542 N.E.2d 1245; and *Northrup v. Allister Construction Co.* (1987), 163 Ill. App. 3d 221, 516 N.E.2d 586.

In *Enblom*, the plaintiff sued the owner of a shopping center and a general contractor who was doing work in the shopping center. The shopping center filed a third-party complaint against the general contractor for contribution. The general contractor filed a motion for summary judgment supported by an affidavit which stated that the general contractor was not working at the shopping center at the

time of the plaintiff's injury. The trial judge entered summary judgment in favor of the general contractor and against the plaintiff. The general contractor then filed a motion for summary judgment on the third-party complaint, and the trial court granted summary judgment to the general contractor. The appellate court affirmed, holding that the third-party plaintiff was collaterally estopped from asserting a claim for contribution because the summary judgment for the general contractor in the underlying action was an adjudication that the general contractor was not a tortfeasor.

In *McCombs*, the plaintiff was injured when she fell in a tavern. She sued the operators of the tavern and the owner of the building. The complaint alleged that the tavern operator and the landlord were guilty of the same acts of negligence. In addition, the complaint alleged that the landlord maintained a building with structural defects. Summary judgment was entered in favor of the landlord. The trial court also granted summary judgment to the landlord on the tavern owner's third-party complaint for contribution. The appellate court affirmed on the ground that summary judgment for the landlord on the underlying complaint was an adjudication that the landlord was not a tortfeasor.

In *Northrup*, the plaintiff, a social guest, sued her host for injuries suffered when she fell on a staircase in her host's home. The plaintiff also sued the builder of the home, who filed a third-party action for contribution against the homeowner. Summary judgment was granted in favor of the homeowner on the underlying complaint. Later, summary judgment was granted to the homeowner on the builder's third-party complaint. The appellate court affirmed on the ground that the homeowner had conclusively been found not guilty of any liability to the plaintiff. The appellate court distinguished the cases cited by the third-party plaintiff thus:

"[The third-party plaintiff] cites a number of cases in which contribution was allowed despite the fact that the party from whom contribution was sought had been sued by the plaintiff and found not liable because of a statutory immunity. In *Stephens v. McBride* (1983), 97 Ill. 2d 515, 455 N.E.2d 54, our supreme court held that plaintiff's failure to comply with the notice provisions of the Local Governmental and Governmental Employees Tort Immunity Act [citation] did not render the defendant village immune from another defendant's countersuit for contribution. [Citation.] Similarly, in *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236, this court held that defendant's interspousal immunity from suit by

plaintiff did not constitute a defense to a countersuit for contribution brought by a third party. [Citation.]" *Northrup*, 163 Ill. App. 3d at 226.

We have some misgivings about the holdings of each of the cases cited by ANR. Collateral estoppel provides that an issue which has been addressed by a court of competent jurisdiction cannot be relitigated in a later action between the same parties or their privies in the same or a different cause of action. (*Simcox v. Simcox* (1989), 131 Ill. 2d 491, 546 N.E.2d 609.) We question whether privity existed between the defendants and the third-party defendants in those cases. The ramifications of the holdings are disturbing. In every case involving codefendants who file claims for contribution, it would behoove each of those defendants to resist any attempt by other defendants to avoid liability in the underlying complaint.

But whether the holdings are correct we need not decide because the cases are distinguishable. Before collateral estoppel may properly be raised in a second case, the issue adjudicated in the first case must be the same issue raised in the second case. (*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 447 N.E.2d 834.) In *Enblom*, a fact crucial to both the complaint and the third-party complaint was decided, namely, whether the third-party defendant was present at the time of the plaintiff's injury. Moreover, the third-party plaintiff was invited to participate in the third-party defendant's motion for summary judgment against the plaintiff and to resist it but did not do so. In *McCombs*, the defendant and the third-party defendant were charged by the plaintiff with some of the same acts of negligence. In *Northrup*, the court pointedly noted that the third-party plaintiff made no allegations of misconduct against the third-party defendant that the underlying complaint did not contain. In the case before us, there is no privity between ANR and Petrolane and Worthington; the allegations of negligence by the plaintiff against ANR are different from the allegations by the plaintiff against Worthington and Petrolane; and the allegations of Petrolane and Worthington against ANR are different from the allegations of the plaintiff against ANR.

In support of their argument that summary judgment in favor of ANR in the underlying complaint does not collaterally estop them from maintaining their actions for contribution, Petrolane and Worthington cite *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382; *Moon v. Thompson* (1984), 127 Ill. App. 3d 657, 469 N.E.2d 365; and *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236.

In *Doyle*, the plaintiff sued a motorist for injuries suffered while the plaintiff was working. The motorist filed a third-party action against the plaintiff's employer for contribution. The trial court dismissed the third-party action on the ground that the employee could not recover in tort from his employer because of the limits of the employer's liability under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, pars. 138.5(a), 138.11). The supreme court reversed the dismissal, reasoning that the "immunity" granted the employer under the Act was an affirmative defense which could be waived by the employer. *Doyle*, 101 Ill. 2d at 10.

In *Moon*, a minor plaintiff was struck by an automobile driven by the defendant, who filed a third-party action against the plaintiff's father for contribution. The third-party complaint alleged that the father had negligently performed his statutory duty to oversee the actions of his child. (Ill. Rev. Stat. 1977, ch. 95½, par. 11—1501(b).) The trial court dismissed the third-party complaint on the ground that the common law doctrine of parental tort immunity barred the plaintiff from suing his father and that, therefore, the father could never be held liable in tort. The appellate court reversed the dismissal.

In *Wirth*, the plaintiff was injured when she fell in a building owned by the defendant city. The city filed a complaint for contribution against the plaintiff's husband, alleging that it was he who maintained and controlled the property. The husband filed a motion to dismiss the third-party complaint on the basis of the interspousal tort immunity statute. (Ill. Rev. Stat. 1979, ch. 70, par. 302(a).) The trial court denied the motion to dismiss, and the appellate court affirmed.

ANR seeks to distinguish the cases cited by Petrolane and Worthington with the claim that those cases involved doctrines or a statute which conferred immunity and that the "fireman's rule" is a rule of substantive law and not of immunity. Implicit in ANR's argument is the corollary argument that the "fireman's rule" must be one or the other and cannot be both. We refuse to accept that corollary argument. It is the effect of the rule that is controlling, whether it be considered a rule of substantive law or not.

Two cases from other jurisdictions have characterized the effect of the "fireman's rule" to be a grant of immunity. (See *Mahoney v. Carus Chemical Co.* (1986), 102 N.J. 564, 510 A.2d 4; *Hauboldt v. Union Carbide Corp.* (1991), 160 Wis. 2d 662, 467 N.W.2d 508.) The Wisconsin case is particularly pertinent factually. In *Hauboldt*, Thomas Coleman repaired automobiles in a garage where he kept acetylene tanks. A furnace Coleman kept in the garage started a fire. The fire

spread and eventually caused an acetylene tank to explode which injured the plaintiff firefighter.

Before the explosion, the police asked Coleman if there were some sealed containers that might explode. Coleman said that there were a container of paint thinner and a gas tank. He did not tell the police of the acetylene tanks.

The plaintiff sued the manufacturer of the acetylene tank, but not Coleman. The manufacturer sued Coleman for contribution, not for negligence in starting the fire, but for failure to warn the firefighters of the presence of acetylene tanks. The Wisconsin Supreme Court recognized that "there is no common liability between [the manufacturer of the acetylene tank] and Coleman because Coleman was *immune* under the firefighter's rule." (Emphasis added.) *Hauboldt*, 160 Wis. 2d at 682, 467 N.W.2d at 516.

A jury returned a verdict in favor of the plaintiff and against the manufacturer for 88% of the award and against Coleman for 12% of the award. The Wisconsin Supreme Court affirmed the judgment, holding that the manufacturer was not entitled to the benefit of the "fireman's rule." The right of the manufacturer to seek contribution from Coleman, even though Coleman was not liable to the plaintiff under the "fireman's rule," was unquestioned.

■ We agree with ANR that we should look to *Washington v. Atlantic Richfield Co.* (1976), 66 Ill. 2d 103, 361 N.E.2d 282, and not *Dini*, as the progenitor of the "fireman's rule." In *Washington*, a divided supreme court held for the first time that the liability of a possessor of land for injuries to a firefighter did not extend to acts of negligence which cause a fire. Later, the appellate court held that the rule of *Washington* applied even if the possessor of land had been guilty of willful and wanton misconduct. (*Luetje v. Corsini* (1984), 126 Ill. App. 3d 74, 466 N.E.2d 1304.) As we previously pointed out, before *Dini*, the possessor of land would have been liable for willful and wanton negligence which injured a firefighter. In our judgment, the "fireman's rule" is a modification of the common law and absolves persons from liability for some acts of their own negligence. We see no appreciable difference between the absolution provided under the "fireman's rule" and the common law immunity granted parents from actions brought by their own children or statutory interspousal immunity. They are all based on public policy. The cases cited by Petrolane and Worthington are persuasive. Our conclusion is in keeping with the broad pronouncement of the supreme court that the Contribution Act is "to reach anyone who is culpable regardless of whether they have

been immunized from a direct tort action by some special defense or privilege." *Doyle v. Rhodes,* 101 Ill. 2d at 9.

We judge that the dismissal order in favor of ANR and against the plaintiff does not collaterally estop Worthington and Petrolane from maintaining a third-party action for contribution from ANR. The judgment in favor of ANR and against Worthington and Petrolane is reversed and the cause remanded for further proceedings.

Judgment affirmed in part and reversed and remanded in part.

McNAMARA, P.J., concurs.

JUSTICE RAKOWSKI, concurring in part and dissenting in part:

While I do not agree with the holding in *Harris v. Chicago Housing Authority* (1992), 235 Ill. App. 3d 276, 601 N.E.2d 1011, I agree, for the reasons set forth in the majority opinion, that plaintiff's complaint does not state a cause of action against ANR because of the "fireman's rule."

However, for that reason (that ANR is not subject to liability in tort arising out of decedent's death), I respectfully dissent from that portion of the majority opinion which reverses the dismissal of the third-party contribution actions against ANR.

Section 2 of the Contribution Act (Ill. Rev. Stat. 1989, ch. 70, par. 302) provides:

"[W]here 2 or more persons are *subject to liability in tort* arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them." (Emphasis added.)

The express language of the Act states that contribution only applies if the party against whom contribution is sought is *subject to liability in tort.* (See *Jodelis v. Harris* (1987), 118 Ill. 2d 482, 517 N.E.2d 1055.) Since the majority holds (and properly so) that ANR is not subject to liability in tort to the plaintiff, it follows, as a matter of law, that ANR is likewise not subject to contribution. *Enblom v. Milwaukee Golf Development* (1992), 227 Ill. App. 3d 623, 592 N.E.2d 190; *McCombs v. Dexter* (1989), 186 Ill. App. 3d 484, 542 N.E.2d 1245; *Northrup v. Allister Construction Co.* (1987), 163 Ill. App. 3d 221, 516 N.E.2d 586.

The majority questions the holdings in *Enblom, McCombs* and *Northrup* on a privity-related issue. In support, the opinion cites *Simcox v. Simcox* (1989), 131 Ill. 2d 491, 546 N.E.2d 609. I, however, fail to see how privity is even an issue. In *Simcox,* the plaintiff, against whom collateral estoppel was alleged, was not a party to the first pro-

ceeding. *Sub judice*, the third-party plaintiffs were parties and do not allege that they did not have notice of ANR's motions to dismiss. To the contrary, the dismissal order of May 31, 1991, reflects that ANR's motions to dismiss both the plaintiff's and third-party's actions were argued and decided at the same hearing. As was stated in *Enblom*:

> "Milwaukee Golf has not argued that it did not have an opportunity to participate in the hearings on Inland's motion, nor does it contend that it had no notice of the summary judgment motion. The order granting summary judgment for Inland specifically stated 'all parties having due notice.' As a result, the summary judgment is conclusive against Milwaukee Golf." *Enblom*, 227 Ill. App. 3d at 629.[1]

I also note that neither Petrolane nor Worthington even argues lack of privity. I respectfully submit that this is so because it is not an issue. While one must be a party *or* in privity with a party to be bound by the doctrine of collateral estoppel, I am aware of no case that requires both.

The majority opinion also states:

> "[T]he allegations of negligence by the plaintiff against ANR are different from the allegations by the plaintiff against Worthington and Petrolane; and the allegations of Petrolane and Worthington against ANR are different from the allegations of the plaintiff against ANR." 255 Ill. App. 3d at 166.

This very contention, however, was rejected in *McCombs*, wherein the court applied the doctrine of collateral estoppel to a contribution claim despite the fact that the theories of recovery asserted in the contribution action (as in the case *sub judice*) were not identical to those contained in the plaintiff's complaint. Instead, the court properly focused upon the fact that the building owner's liability to the plaintiff had been negated and, therefore, there was no longer any basis for a contribution action:

> "The Dexters contend that the phrase 'subject to liability in tort' means that an action for contribution may be premised upon legal theories of liability not contained in the plaintiff's complaint. Certainly, there is no requirement that the bases for liability among the contributors be the same or that the basis for contribution be identical to the theory of recovery asserted in the original action. [Citation.] However, the language of the

---

[1]Although the *Enblom* court used the term "collateral estoppel," it would also be "law of the case." See *McDonald's Corp. v. Vittorio Ricci Chicago, Inc.* (1984), 125 Ill. App. 3d 1083, 1086-87, 466 N.E.2d 1116.

statute is plain that the basis for a contribution claim is the potential liability of both the person seeking contribution and the person from whom contribution is sought. In other words, unless both the Dexters and Patterson are subject to liability in tort, the Dexters have no right of contribution." *McCombs*, 186 Ill. App. 3d at 486.

Under the facts of the case *sub judice*, plaintiff was unable to recover as a result of the "fireman's rule." The majority opinion states:

> "We conclude that the plaintiff would never be able to prove *any set of facts* which would establish that the deceased's injuries were sustained by risks that are not associated with fighting fires and would not be reasonably anticipated by a firefighter. The forklift truck itself was on fire. Maicach, like any reasonable person, must have realized that the source of the forklift power, be it gasoline or propane, was highly combustible and could explode. The danger to Maicach and the risks he had to take were apparent." (Emphasis added.) (255 Ill. App. 3d at 162.)

It is clear from this language that under the facts of this case, ANR is not subject to liability in tort arising from the decedent's death. Thus, while the allegations may be different, the party from which contribution is sought has been absolved from any legally culpable conduct. The distinction, therefore, is one without a difference.

Finally, the majority equates the "fireman's rule" with an immunity. It is true that a defendant who is subject to liability in tort will not be spared from a contribution action just because he is cloaked with common law or statutory immunity which, if raised, would defeat the claim. Illinois courts have consistently so held in *Moon v. Thompson* (1984), 127 Ill. App. 3d 657, 469 N.E.2d 365 (parental immunity); *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382 (Workers' Compensation Act); *Stephens v. McBride* (1983), 97 Ill. 2d 515, 455 N.E.2d 54 (Tort Immunity Act); and *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236 (interspousal immunity). The key to understanding the difference between the immunity cases and the case *sub judice* is differentiating between one who is not subject to liability in tort as opposed to one who is but has an immunity. When courts speak of a defendant possessing an immunity it is usually presumed that it is subject to liability in tort. This is so because if a party is not subject to tort liability it would be meaningless to discuss immunity.

The foundation of the "fireman's rule" is that a landowner does not owe a duty to a fireman for injuries incurred as a result of fight-

ing a fire. That the cornerstone of the "fireman's rule" is lack of duty is expressed in *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 148, 379 N.E.2d 281:

> "First, since most fires occur because of the negligence of the landowner or occupier, it was believed that the imposition of a duty to prevent fires from occurring or spreading on a person's premises would place an unreasonable burden upon the person who owned or occupied improved land. [Citations.] This public policy consideration, however, tended to undermine the general duty imposed upon landowners or occupiers to exercise reasonable care to keep their premises safe. A compromise was reached with regard to firemen, recognizing that the risk of harm from fire is inherent in a fireman's occupation."

It is axiomatic that one who does not owe a duty cannot be subject to liability in tort. Because ANR did not owe the decedent a duty, it is not subject to liability in tort and cannot be subject to contribution. This is not the same (as the majority contend) as an immunity. An immunity is an affirmative defense which may or may not be raised. (See *Doyle*, 101 Ill. 2d at 10-11.) The distinction between a defendant who is not subject to liability in tort as opposed to one who is but possesses a common law or statutory immunity is set forth in *Northrup*:

> "In order to find the Midlands culpable in this case, as in any case, the court would need to find that the Midlands owed plaintiff a duty of care and that they failed to act in accordance with that duty. *** Since the Midlands met their legal duty of care, their conduct cannot be considered legally culpable, and thus, under *Doyle*, they are not subject to liability in tort to Northrup.
> ***
> Allister cites no case in which defendant was found to be liable for contribution even though he had fulfilled his duties to the plaintiff. The defendants in the contribution actions cited by Allister were immune from suit, but their culpable actions rendered them subject to liability in tort. [Citation.] In the eyes of the law, the Midlands' actions toward Northrup were not culpable, and therefore Allister's suit for contribution must fail.
> *** Since the Midlands met their duties to Northrup, their acts are not legally wrongful. Since the Midlands are not tortfeasors, the principles underlying the Contribution Act authorize no contribution from them." *Northrup*, 163 Ill. App. 3d at 225-27.

It should also be noted that the motion to dismiss was brought and allowed pursuant to section 2—615 (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), where the test is whether plaintiff is entitled to recover assuming all well-pleaded facts to be true, as opposed to section 2—619 (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), where a valid cause of action is presumed but barred by affirmative matter—such as an immunity.

Nor does the Wisconsin case *Hauboldt v. Union Carbide Corp.* (1991), 160 Wis. 2d 662, 467 N.W.2d 508, upon which the majority relies, offer any help on this issue. This is so because, in *Hauboldt*, the landowner (Coleman) was not joined as a defendant, and, unlike the case *sub judice*, there was never a judicial determination that Coleman was not subject to liability in tort for the plaintiff's injuries. *Hauboldt* only holds that Coleman was liable in contribution to the third-party plaintiff, a decision which Coleman never challenged on appeal.

From the above, it is clear that pursuant to the "fireman's rule," ANR did not owe a duty to the decedent. As a result, it is not subject to liability in tort arising out of the decedent's death. Accordingly, it is not the subject of a third-party contribution claim.

I would, therefore, affirm the trial court's dismissal of Worthington's and Petrolane's third-party complaints for contribution against ANR.

### SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE EGAN delivered the opinion of the court:

The plaintiff has filed a petition for rehearing from our affirmance of the judgment in favor of ANR and against the plaintiff, and ANR has filed a petition for rehearing from our reversal of the judgment in favor of ANR and against Petrolane and Worthington. Pursuant to our order, ANR has responded to the plaintiff's petition, and Petrolane and Worthington have responded to ANR's petition. We will first consider the plaintiff's petition.

■ In the petition for rehearing the plaintiff now argues that he should be permitted to plead the same allegations that Petrolane and Worthington have pleaded against ANR. He maintains that a plea by him that ANR "created a latent and unforeseeable danger," as pleaded by Petrolane and Worthington, would be an exception to the "fireman's rule" that would entitle the plaintiff to his own separate cause of action. We must decline to do so for two reasons:

(1) Whether the allegations of Petrolane and Worthington would constitute an exception to the "fireman's rule," if pleaded by the plaintiff, was not before us (nor the trial judge). The only issue before us was whether the facts pleaded by Petrolane and Worthington, even if true, would not support a claim for contribution because *the complaint filed by the plaintiff* did not constitute an exception to the "fireman's rule." The sufficiency of the complaints of Worthington and Petrolane, if pleaded by the plaintiff, has not been briefed or argued in this court. Those allegations were accepted by ANR only as they applied to Worthington and Petrolane and only for the purposes of this appeal by Worthington and Petrolane.

(2) The plaintiff was aware of the claims of ANR, and he was aware that the "fireman's rule" might not apply if the plaintiff was exposed to hidden dangers and thereby injured. The plaintiff was also aware of the allegations of Worthington and Petrolane. The plaintiff could have filed an amended complaint and did not do so. An argument similar to that now made by the plaintiff was made to this court in *720 Rand, Inc. v. Home Indemnity Co.* (1989), 188 Ill. App. 3d 582, 587, 544 N.E.2d 1059, in which we said:

> "It is the general rule that only issues, questions, points or contentions presented in the trial court will be considered on appeal; and a trial court should be held accountable for ruling only on what is asked of it. [Citation.] ***
> ***
> The plaintiff never advanced the argument before the trial judge that it does here ***. To permit that argument to be advanced here for the first time would not only be unfair to the trial judge but contrary to a basic principle of appellate law. [Citation.]"

For these reasons, the petition of the plaintiff for rehearing is denied.

■ ANR's petition for rehearing is signed by the same attorney who argued before us. In that petition for rehearing, ANR's attorney states that this court "misperceived ANR's principal argument which is based upon the nature of tort contribution liability and *not upon any concept of collateral estoppel.*" (Emphasis added.) The petition adds that ANR's choice of case law in ANR's brief "coincidentally" involved estoppel by verdict and "perhaps misdirected this court's focus." The petition insists that collateral estoppel was not the "main thrust" of ANR's argument, and that our statement that collateral estoppel was the main thrust of ANR's argument "is not accurate." It concluded that part of the argument with the following:

"Thus, when the majority questioned the possible application of the collateral estoppel doctrine, it overlooked the fact that the doctrine, as such, is not the primary basis of ANR's position, but is only, *a fortiori*, an application of it."

The petition now cites for the first time more than 20 opinions. The petition reminds us that the members of the majority participated in two of those opinions, one more than 20 years ago and the other more than 14 years ago.

After listening again to the oral argument, we conclude that ANR's attorney now takes a position diametrically opposite to the position he took before the opinion was rendered and that he is in violation of Supreme Court Rule 367(b). (134 Ill. 2d R. 367(b).) See *County of Cook v. Illinois Local Labor Relations Board* (1989), 189 Ill. App. 3d 1057, 551 N.E.2d 229.

When ANR's attorney began his argument, he was interrupted by questions which were addressed to the issue of immunity. After answering those questions he said the following:

"We are not asserting that as a matter of pleading they have not pleaded a third-party action. *The basis for the dismissal of the third-party action against my client is the doctrine of res judicata and/or collateral estoppel.*" (Emphasis added.)

When one of the members of the court questioned whether *res judicata* had been raised in ANR's brief, the attorney for ANR specifically referred to the cases which we have discussed in our opinion and which were cited by ANR in its brief. He emphasized that the cases were decided on the basis of *res judicata* or collateral estoppel. We judge that nothing could be clearer to us than the fact that collateral estoppel was, indeed, the "main thrust" of ANR's argument.

In the petition ANR's attorney makes this statement:

"This court's majority opinion (at p. 20) postulates that ANR proposes a dichotomy between a rule of substantive law and a rule of immunity. That is not precisely accurate. What ANR (and all the case law) proposes is a single, general rule; to wit: no liability in tort to the injured party means no contribution liability to a tortfeasor who has injured the injured party. The 'immunity' cases are not an exception; rather, they only illustrate situations of potential tortfeasors who have procedural or affirmative defenses to direct actions."

We must refer again to the oral argument made by the attorney for ANR in which he said something quite different:

"I will agree that if the fireman's rule is a rule of immunity rather than a rule of substance, then the fact that we have

been found to be quote immune does not afford us necessarily a defense to the action for contribution."

Our answer to ANR's contention now is that, if we misapprehended or misconceived ANR's principal argument, we were not taken by the hand down the path that led to our "misapprehension" or "misconception" of the "main thrust" of ANR's argument; we were pushed and prodded down that path by ANR's attorney in oral argument. But we did not misapprehend ANR's argument. We adhere to our holding that collateral estoppel was the main thrust of ANR's argument, and we adhere to our statement that ANR's position was that there is a difference between a rule of substantive law and a rule of immunity. On this issue of the effect of the "fireman's rule," we refer to other authority not mentioned in our opinion.

In *Wills v. Bath Excavating & Construction Co.* (Colo. App. 1991), 829 P.2d 405, 409, the court said:

"We agree *** that, while a public safety officer's special skills, training, and experience may be considered with reference to any comparative negligence involved, a *per se* grant of immunity to those whose negligence created a dangerous situation for the officer is unwarranted. In consequence, we conclude that the fireman's rule is no longer the law in Colorado."

In *Cristiano v. Marinaccio* (1989), 145 Misc. 2d 791, ____, 548 N.Y.S.2d 378, 380, the court referred to the New Jersey Supreme Court's pronouncement that willful and wanton conduct "is an exception to the immunity offered by the fireman's rule."

In a recent law review article it was said:

"Thus, because property owners/occupiers can reasonably avoid incidents involving gross negligence, they usually are not afforded immunity under the firefighter's rule." David L. Strauss, *Where There's Smoke, There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years*, 1992 Wis. L. Rev. 2031, 2040.

■ There are other arguments raised for the first time by ANR's attorney in the petition which we will nonetheless address. He says that the "fireman's rule is *not a defense*." (Emphasis in original.) Our brief answer is that the "fireman's rule" is based on a limited assumption of risk. (See *Washington*, 66 Ill. 2d at 109; *Court*, 72 Ill. 2d at 149; *McShane*, 235 Ill. App. 3d at 865.) It is, in our judgment, a "special defense" which the supreme court said could immunize a defendant from direct tort action but would not put a defendant beyond the reach of the Contribution Act. (*Doyle*, 101 Ill. 2d at 9.) It is a defense that must be raised in some way by

a defendant, and it may be waived if it is not raised. Can anyone doubt that ANR could have simply filed an answer in which it denied that it had been negligent and denied that its negligence was the proximate cause of Maicach's injury?

As noted, ANR's attorney has now cited for the first time more than 20 cases, including two in which the members of the majority participated. In the one decided in 1973, in which Justice Egan concurred (*Karon v. E.H. Marhoeffer, Jr. Co.* (1973), 14 Ill. App. 3d 274, 302 N.E.2d 478), and which involved a claim for indemnity not contribution, the sole argument made by the third-party plaintiff was that it had not been given an opportunity to participate in the third-party defendant's motion for summary judgment against the plaintiff. The appellate court held that it had. The third-party plaintiff did not argue that the issues were different or that there was a lack of privity. In the one decided in 1979, in which Justice McNamara concurred (*Kramer v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 1015, 387 N.E.2d 1105), the third-party plaintiff conceded privity and that he was bound by the previous judgment. His argument was that in the previous case he had been a defendant and that in his own case he was the plaintiff. That case also did not involve contribution.

In addition to the three cases we have already discussed, *Enblom, McCombs* and *Northrup,* ANR's attorney cited at oral argument two other cases, *Taake v. WHGK, Inc.* (1992), 228 Ill. App. 3d 692, 592 N.E.2d 1159, and *Esworthy v. Norfolk & Western Ry. Co.* (1988), 166 Ill. App. 3d 876, 520 N.E.2d 1044. In the petition for rehearing ANR reargues those five cases, all of which involved collateral estoppel. In four of those cases the trial court ruled that the third-party defendant had not been guilty of the negligence charged or that the plaintiff had failed to prove proximate cause. In the fifth case, the plaintiff (and third-party plaintiff) were required to prove willful and wanton negligence on the part of the third-party defendant and the plaintiff had not done so. In the case before us, there has been no determination that ANR was not guilty of some act of negligence. Indeed, under the state of the pleadings, ANR was guilty of willful and wanton negligence that proximately caused the death of Maicach *and* it was guilty of misuse of the third-party plaintiff's product.

After the petition for rehearing was filed, ANR's attorney called to our attention *Delaney v. McDonald's Corp.* (1993), 249 Ill. App. 3d 239, 618 N.E.2d 1057. In that case the plaintiff filed an action for injuries suffered on a construction site against the site

owner and a contractor. The site owner filed a third-party action for contribution against the contractor. The plaintiff's complaint against the contractor was dismissed with prejudice for failure of the plaintiff to exercise reasonable diligence to obtain service against the contractor before expiration of the statute of limitations. The trial court then granted summary judgment in favor of the contractor and against the third-party plaintiff based on the fact that the dismissal of the underlying complaint acted as an adjudication on the merits and that, therefore, the contractor was not liable in tort to the plaintiff. The appellate court affirmed. We have been informed that the supreme court has granted the third-party plaintiff's petition for leave to appeal.

ANR's attorney argues that if the *Delaney* case is affirmed by the supreme court, it would be clear authority sustaining ANR's position. If, on the other hand, ANR maintains, the supreme court reverses the appellate court in *Delaney*, that reversal "would not necessarily support this Court's majority's articulate position." Apart from noting factual distinctions between *Delaney* and the case before us, we must respectfully express disagreement with the appellate court holding in *Delaney*.

The "main thrust" of ANR's petition is that ANR did not have any "duty" to Maicach and that without a "duty" there can be no liability in tort. ANR states that in those "immunity" cases upon which we relied the immunized person did in fact have a duty to the plaintiff. This statement, of course, is pure *ipse dixit* on the part of ANR, which cites no cases to support the statement.

We recognize that the supreme court has sometimes couched the "fireman's rule" in terms of duty, but we do not believe we should seize upon isolated language in the supreme court opinions and construe that language to mean what ANR argues. There is nothing in the Contribution Act that says that contribution shall lie between two or more persons who violate a duty to a third party. The Act simply says that contribution shall lie between two or more persons who are liable in tort to another person. Regardless of how ANR may argue, it cannot avoid the fact that immunized persons are not liable in tort and, yet, the supreme court says that they are liable in contribution.

This is a case of first impression in Illinois. In fact, our research has not disclosed any case in which the precise issue of the effect of the "fireman's rule" on the right of contribution has been raised. In the Wisconsin case, *Hauboldt v. Union Carbide Corp.*, which we discussed in our opinion, the right of contribution was

taken for granted. The rule itself is not without its detractors. (See David L. Strauss, *"Where There's Smoke, There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years*, 1992 Wis. L. Rev. 2031.)[2] Five States have refused to adopt the rule. At least four States have adopted and later abolished the rule.

The question before us is what limits, if any, are to be placed on application of the rule? Our supreme court has already decided in *Court* that the protection of the rule would not be extended to manufacturers of products. Consequently, acceptance of ANR's argument means this: ANR may be guilty of willful and wanton negligence in causing the fire; ANR may also be guilty of misuse of the product that contributed to the explosion of the propane tank; the manufacturer of the tank, who would not be a defendant but for the negligence of ANR in causing the fire, may be liable for Maicach's death; but ANR walks away scot-free. That is an unjust result. That result could not have been the intent of the legislature when it adopted the Contribution Act, which was a codification of *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437; and, in our judgment, such a result could not have been the intent of the supreme court when it adopted *Skinner*.

For these reasons, the petition of ANR for rehearing is denied.

McNAMARA, P.J., concurs.

RAKOWSKI, J., concurs in the denial of the plaintiffs' petition for rehearing; he dissents from the denial of ANR's petition for rehearing.

---

[2]This law review article informs us that Illinois was the first State to adopt the fireman's rule in *Gibson v. Leonard* (1892), 143 Ill. 182, 32 N.E. 182.